Thank you. The name Annie Dugan has become somewhat of a household name in eastern Massachusetts. That tragic story also provides an opportunity for this court to weigh in at the intersection of forensics and due process. She's become a symbol of government corruption, but not necessarily corruption that is grounded in dollars and cents as often as the case, but corruption apparently with the intent to incarcerate. Apparently. Mr. Sinchrom, you've only got 10 minutes. Do you mind if we get to the case in front of us? What's the standard by which we should be reviewing this appeal? In essence, your principal claim of error, I understand there's a sentencing claim too, your principal claim of error is that the defendant should have been allowed to withdraw his plea. Should have been allowed to withdraw his plea as a matter of law and that you have de novo review and also No, no, I wasn't questioning, but what's the standard? Now we have two different standards for plea withdrawal depending on the timing of the motion and appeal. Well, we filed almost instantly so it's fair and reasonable if that's what you're Okay, fair and just reason, which is the pre-sentence standard. I understand you made an attempt to reserve your rights at the time of the plea. I just wanted to confirm that you believe the fair and just reason standard applies here. I think the government conceded it in its brief. I know they conceded it at the hearing right in front of Judge Stearns back there. So there's no question that that's the standard. You got to me the very next sentence I was going to say is my client pled guilty into this maelstrom of the Annie Dukin situation only in knowing the tip of the iceberg. And we started filing papers. And I phrase it that way because the original papers basically just said, hey, there's a problem. We may want to revoke. And then we moved immediately to revoke or vacate the plea. So we're clearly within that pre-sentence position. And I think everybody agrees with that. Counsel, in what respect do you claim that that standard makes a difference from the standard that would otherwise apply? In other words, does it give you an edge up in the way that you're framing your argument? I don't know if it gives me an edge up on, say, another person. But I think it gives an edge up on the sense that we put in our reply brief, the Garcia case, which talks about it being essentially a lenient standard, a more lenient standard than, say, Ferrara, who came in 12 years later. But having said that, we're comfortable with arguing Ferrara as the basic two-pronged test to make the determination. Understanding is superimposed upon that as the more lenient standard because unlike Ferrara, who was 12 years late, we came in immediately. But Ferrara is not a standard that's ever been applied in a plea withdrawal case. Ferrara is a habeas standard. Understood. Of course, that's what makes ours better. Ferrara is nonetheless the relatively concise, simple, I'll use the word, the relatively simple two-pronged test for vacation of a plea. And the fact that it is after years, decades, I think just makes our case stronger. In other words, if we meet the Ferrara test, and I believe we easily do, then there can be no question that it ought to have been fair and reasonable to allow us to have withdrawn the plea. Let me ask you a few factual questions. There was a change of plea colloquy here. Yes, sir. Did your client admit during the plea colloquy that he had distributed cocaine? Yes. Doesn't that admission affect whether or not there's a reasonable probability that the Dukin revelations would be material for this case? No. It's no different than in any other situation like Ferrara. Although I understand in that particular situation, it's not the offer of a plea. It's not like Ferrara at all. Your client stood in front of a federal judge and said, in words or substance, I distributed crack cocaine. Because he was tricked into believing he had no choice. Wait a minute. Wait a minute. He was asked specifically whether there were any threats, any promises, any assurances, and he said no to all of that. Of course. He had every choice. If he believed that that substance was not cocaine, he could have gone to trial. That's not the question. You would like it not to be the question. Well, and I'm urging you not to think that way. Let me take it a little different because the question is whether, after all the time he spent with me and all the time he spent with his prior attorney, he thought that a trial would be a useful exercise. He only had that alleged substance in his possession for a few seconds, and it was a tiny, tiny little bit of contraband material. The government's entire case of guilt relied upon these certificates. Now, in the rough and tumble world of plea bargaining, I acknowledge, we take those certificates for granted most of the time. That's exactly why this case is so shocking. Because that's the kind of scientific corruption that has the potential to lock up innocent people. What's the effect of the subsequent testing on the other baggies that came out of the same stockpile as these two baggies? Well, it's, they're forever tainted. They're forever tainted. They were never tested by Dukin. We don't know that. Well, we do know that. No, we do. Respectfully so. Excuse me. The government has represented, the affidavit is, that these bags were held in evidence, but there's nothing in the record that suggests that Dukin ever tested them. They were. He tested the two bags that your client. No, she never tested my client. No, excuse me. Excuse me. The allegation is, your allegation, is that the chemical test, the test certificate she signed, related to the two bags that your client allegedly transferred. Yep. That's the certificate of which you're complaining. Those two bags came out of a discrete stockpile. From that stockpile, there were other bags held in evidence which were never the subject of a Dukin F certification in either your case or the Wilkins case. The government has subsequently had those tested by an independent chemist, and they have been certified, and that evidence is uncontradicted on the record, as containing crack cocaine. And so my question to you is, what significance does that evidence have? And I repeat my answer most respectfully, because the chain of custody is ruined by Ms. Dukin, and if nothing else, my client and or Mr. Wilkins ought to have a chance to go to trial and demonstrate that as a quasi-affirmative of defense, if you will. The fact that after this kind of corruption, we're supposed to rely on the government and accept what they present, I think is a faulty proposition, as is set out in the West Virginia case, the Texas case, and these other cases, that all say that this retesting is of most marginal significance. There's no retesting here. There is no showing that this other group of bags from the stockpile were ever tested before. This isn't retesting. The government's made no attempt to retest the samples that were certified by Dukin. Indeed, it's probably impossible to retest them. All right? Counsel, let me ask our Chief Judge if she has any questions for you. Yes, I'd like one or two sentences on why the seven-year sentence in this case is unreasonable. Because Mr. Merritt was sentenced for conduct decades – well, maybe I'm exaggerating – years prior for which he had been well rehabilitating. Mr. Merritt engaged in conduct one night that would not even have warranted jail time at all in the federal system, but for the notion that he was an alleged career criminal, and we argue in the brief that it does not comply with 18 U.S.C. 13135 – whatever the statute is, I'm sorry – the gall and so forth, Your Honor. Two sentences. I hope that answers it. Yeah, thank you very much. Thank you very much, Your Honor. Mr. Sins, I have one additional question. Why isn't there in the record an affidavit from your client explaining either his guilty admission or at least saying that if he'd known of all these facts, he would not have pled guilty? Because in the hurly-burly of something new, I believed, perhaps foolishly in hindsight, that an affidavit from an attorney – namely myself, and I don't mean to be self-serving – with 30 years' experience, who knew this man, who sat in a cage with this man, I thought that affidavit would be good enough. If I told Judge Stearns that I knew my client would not have pled if, in fact, he knew the true facts, I stand by that today. I know I'm not a witness here at this high court, but I was the only person that had actual knowledge. I testified to it in the form of an affidavit. I said on the record, I will be a witness. No one chose to put me on the stand. I didn't think it was necessary. Thank you. Thank you, Your Honor. Good morning. Good morning, Counsel. Tina Chetawitz for the government. Ms. Dukin's conduct at the Hinton Lab is very upsetting, but it does not affect the reliability or voluntariness of Mr. Merritt's plea, nor does it cast doubt on the district court's discretionary decision that Mr. Merritt had not established a fair and just reason for having his plea set aside. To answer Judge Selye's question at the beginning of Mr. Sinsheimer's argument, this case is governed by a more lenient standard than Mr. Wilkins' case is next, as he brought a 28 U.S.C. 2255 petition. Nonetheless, the heart of Mr. Merritt's claim was that he could establish that his claim was involuntary. And although Ferrara is a 2255 case, it nonetheless is informative with respect to Mr. Merritt's claim of involuntariness. Could the prosecution have successfully prosecuted this case without relying in some manner on some testing of a substance that had been in the lab while Ms. Dukin was performing her malfeasance? If I understand the question, it goes to perhaps Mr. Wilkins' argument that because the drugs, all of the drugs were in the Hinton Lab at some point, they were all tainted. I just want to understand how the prosecution would have prosecuted this case or could have prosecuted it to get a guilty verdict. Well, first of all, the law does not actually require a chemical test to prove a drug conviction. And in this case, there was abundant evidence aside from Ms. Dukin's test of Mr. Merritt's guilt. So you could say the undercover officer asked for cocaine and a white substance was then delivered to him, field tested as such, represented to be cocaine by the defendant. Well, I correct that because honestly I don't think the record establishes that the undercover officer asked for cocaine. But the evidence showed that Mr. Merritt was in an area that was known for drug dealing. He knew precisely what the officer meant when the officer asked where the stacks were, a reference to a place to buy drugs. He sold the officer what he purported to be a bag of drugs. He got those drugs from the person he described as his boy, Mr. Wilkins, who at the time of his arrest had an additional 30 bags in his possession. After they were arrested, both defendants acted with a guilty conscience. Mr. Merritt lied about his source of supply, and Mr. Merritt apparently desperately tried to get rid of 30 of the bags on his way to the police station. Mr. Wilkins. Mr. Wilkins, excuse me. What about the field test? One of the packages of drugs on Mr. Wilkins was tested, but that would be admissible in Mr. Merritt's trial as well. And the government's position is that the second series of tests would also be admissible. Does it make any difference whether the substance was heroin or cocaine? It would not make a difference for the charge in this case, which should not charge a particular quantity of drugs. The government only needs to prove that the defendants possessed a controlled substance. And the evidence was abundant of that. With respect to the second series of tests, I wanted to correct what I think might be a slight misimpression. All of the drugs, Your Honors, did go to the Hinton Lab. So they were at some point in the Hinton Lab. And in Mr. Wilkins' view, that fact makes the chain of custody somehow unreliable. But the evidence, the uncontradicted evidence in the case is that most, the majority of the bags in Mr. Wilkins' possession had never been opened. And Mr. Wilkins, although he now says the district court should have ordered a hearing on that, never produced any contrary evidence. He never asked for a hearing. And he did not ask for a hearing. Given the standard that we have, fair and just reason, and given that we're trying to decide has the prosecution's case fundamentally changed and would he have still pled guilty if he'd known the facts, what's the harm of just letting him be plead? And if your case is still a decent case and he, knowing that, would still voluntarily plead guilty, he will. And if he doesn't, he won't. What's the harm? Well, I think I have two responses to that. On a very institutional level, allowing Mr. Merritt to set aside his plea would, we think, destabilize guilty pleas in the First Circuit. If we had a rule that whenever the lab has got someone who's falsifying drug results, then you can withdraw it, how would that destabilize pleas? Presently, the law in this circuit, with respect to the voluntariness of a defendant's plea based on a claim that his plea was involuntary because he misapprehended the facts, is Ferraro v. United States. And that requires a showing that the defendant's misapprehension concerning the unknown at the time of plea fact results from some egregious, particularly egregious misconduct on the part of the government. But let me ask you, don't we have that here if we consider her to be a member of the prosecution team? No, we don't have it here for a number of reasons. If we consider her to be a member of the prosecution team, we don't consider her conduct to meet whatever standard you would like? Under Brady v. United States, the egregious misconduct has to be related, we think, to the inducement of the guilty plea. In Brady v. United States, the Supreme Court talked about the government offering promises that can't be fulfilled, bribes, and threats. So the kind of conduct referred to in Brady v. United States is conduct that goes directly to the defendant's decision to plead guilty. If the court extends the carefully crafted rule in Ferraro, it will run afoul of Brady v. United States because it will essentially allow a defendant to set aside his guilty plea based on facts that were later discovered or later transpired that he could have predicted at the time of his guilty plea. But isn't your stronger argument, Ms. Jadowitz, on the second part of the Ferraro formulation? Because on the reasonable probability prong? I would say that the government should prevail on both prongs. I know that. I know you'd say that. Sure. I could have predicted that before I read the briefs. Absolutely. I think that the evidence, and I can go through it, the evidence on the second prong would compel affirmance of the district court. We would prefer the court to also decide the first prong because a decision on the first prong of finding that Annie Dukin's conduct or even just the alleged laxity of the Hinton lab does not constitute the kind of egregious misconduct that this court referred to in Ferraro will provide guidance to district courts. You're saying if the government intentionally lies to the defendant about a material piece of evidence saying that something is tested in accordance with proper procedures when a government agent knows that's false, you're saying that shouldn't worry us in this conduct enough to set aside a plea if the other requirements for setting aside a plea are otherwise met? This is a little bit of a loaded question because my response is that Ms. Dukin is not a government agent. Let's assume we find she is. If the case agent, for example, went to the defendant and said here's the certificate, you better plead guilty, and knowing of the Ms. Dukin's conduct, that would come within Ferraro v. United States, but as Judge Sellier suggests, we would prevail on the second point. What happened here is so far removed from what the court was referring to in Ferraro v. United States and doesn't come at all within the terms that the Supreme Court used to define misrepresentation in Brady v. United States that we think that the rule would run afoul of the Supreme Court precedent, not only in Brady v. United States, but also in Tollett v. Henderson and McMahon v. Richardson. Let me ask Chief Judge Lynch if she has any questions for you, Counsel. No, thank you. Thank you, Counsel. Good morning, again. I want to rebut the notion that a decision for Mr. Merritt would destabilize pleas in the First Circuit. I say the exact opposite, most respectfully, that the destabilization comes from the egregious misconduct, which fortunately we all recognize to be relatively rare. So it provides this court a teaching moment, an opportunity to stabilize, an opportunity to strengthen due process so that a plea is really a plea, not the result of the kind of egregious and gross misconduct that sadly we've seen here. Thank you.